400004968

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORTH WORTH DIVSION

MITCHELL VASIN,                          §
                                         §
    Plaintiff,                       §
                                         §    **4-25CV-880-0**
v.                                       §    Civil Action No. _____
                                         §    mw  AUG 15 2025 PM1:42
ALLIED PILOTS ASSOCIATION,               §    FILED-USDC-NDTX-FW
                                         §
    Defendant                        §

---

## CIVIL COMPLAINT

Plaintiff Mitchell Vasin, Plaintiff *pro se*, brings the following Complaint against Defendant Allied Pilots Association ("APA) and in support thereof, alleges as follows:

### PARTIES

1.  Plaintiff Mitchell Vasin is resident of Phoenix, Maricopa County, Arizona. Plaintiff is employed as a Phoenix-based Boeing 737 Captain for American Airlines.

2.  Defendant APA is an unincorporated labor union with its principal office located in Ft. Worth, Tarrant County, Texas. APA is authorized by federal law as the exclusive bargaining representative (labor union) for the approximately 16,000 pilots employed by American Airlines and has held that authority since approximately 1963.

### JURISDICTION AND VENUE

3.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action is authorized pursuant to federal statute, specifically 29 U.S.C. § 412.

1

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as APA's principal office is located within this District and Division.

5.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the actionable conduct alleged herein occurred within this District and Division.

6.  Venue is also proper in this Court pursuant to 29 U.S.C. § 412 as the actionable conduct alleged herein occurred in this District and Division, and because APA's principal office is located within this District and Division.

## FACTUAL ALLEGATIONS

### The Allied Pilots Association (APA)

7.  The pilots of America Airlines were an original member of the Air Line Pilots Association ("ALPA"), the international airline pilots' union, when ALPA formed in 1931.

8.  In 1963, the pilots of American Airlines, by way of a federally authorized election, voted to leave ALPA and form their own independent union, APA. APA has served as the collective bargaining agent (union) since then.

9.  APA is a "labor organization" as defined by the Labor Management Reporting and Disclosure Act ("LMRDA") 29 U.S.C. § 402(i). APA is "engaged in an industry affecting commerce" as defined by the LMRDA because it "is the certified representative of employees under the provisions of . . . the Railway Labor Act, as amended." 29 U.S.C. § 402(j)(1).

10. APA is presently comprised of a 20-member Board of Directors ("APA BOD") that serves as the legislative and policy-making body for APA. The 20-member APA BOD is comprised of two pilots elected by the APA members at each of American Airlines' 10 pilot domiciles (or "bases"): Boston (BOS), Charlotte (CLT), Chicago (ORD), Dallas / Ft. Worth (DFW), Los Angeles (LAX), Miami (MIA), New York (LGA), Philadelphia (PHL), Phoenix (PHX), and Washington D.C. (DCA). The APA members at all pilot domiciles collectively elect three (3) APA National Officers: a President, Vice-President, and Secretary / Treasurer. The National Officers execute the policy of the APA BOD and otherwise manage APA's day-to-day affairs.

11. APA has a Constitution and By-Laws ("CBL"), the Preamble of which states that its purpose is "to provide the mechanism whereby the collective and individual rights of APA pilots are safeguarded through a formula for sound leadership and, at the same time, retention of control of APA by the membership."

12. APA maintains and supports a website and an electronic forum system called "The Line" that, according to the APA Policy Manual, "is intended to provide a platform that will allow for discussion of issues pertaining to the execution of American Airlines pilot duties between active members of the Association and other authorized participants."

13. Use of The Line requires each member, upon each log-in to The Line, to accept the terms of an adhesion Acceptable Use Policy (AUP), a true and correct copy of which is attached to this Complaint as **Exhibit A** and incorporated by reference.

3

<u>History of APA-ALPA Merger Efforts</u>

14. The APA CBL, specifically Article I Section III.C. provides that "[a] decision to pursue or investigate an affiliation or merger with another labor organization . . . shall require a two-thirds vote of the Board of Directors." This section expressly authorizes APA to merge with ALPA.

15. The most recent attempts by APA members to bring about an APA-ALPA merger were prompted by an official communication transmitted to all APA members by an outgoing APA Vice-President nearly a decade ago. The communication stated, in relevant part:

> "The most important conversation we could possibly have right now is whether we should continue as an independent union or consider going back to ALPA. Yes, I just said that."

> "But not having this debate at all would be a huge mistake."

> "Any serious movement to go back to ALPA needs to come from outside the APA building."

16. The following year, 2016, there were at least two news articles covering the topic: "American Airlines pilots can increase clout by rejoining larger union, former union exec says" by Conor Shine of the Dallas Morning Nes on February 25, 2016; and "Unhappy American Pilots to Push Union Switch After Five Decades" by Mary Schlangenstein of Bloomberg on October 24, 2016. In the second of these articles, the APA President at the time was quoted as saying that "'it's time to have the debate' about closer ties to the larger union."

17. Despite the public support for an APA-ALPA merger from APA's top officials, the APA BOD never polled its membership on the topic.

18. In or about early 2022, a group of APA members formed a grassroots effort to educate other APA members about an APA-ALPA merger.

19. In fall of 2022, the grassroots effort paid off, and the APA BOD finally decided to engage a professional survey of the APA membership on the issue. The results of the survey were presented to the APA BOD in November 2022. The results demonstrated significant APA membership support for exploring an APA-ALPA merger:



20. Following these results, the APA BOD, by a *unanimous* vote of *all* its 20 members, formed an "APA ALPA Exploratory Committee" ("AAEC") to explore an APA-ALPA merger. Excerpts from the charging resolution include:

> WHEREAS the APA Board of Directors has been presented with the results of the survey and has determined there is sufficient interest among the membership to investigate a possible merger with ALPA...
>
> …
>
> WHEREAS the APA Board of Directors believes that establishing a committee to engage with representatives of ALPA and others to investigate the advantages and disadvantages of a merger is an appropriate action to take at this time...
>
> …
>
> 1. Charter Statement
>
> The APA-ALPA Merger Exploratory Committee's purpose is to consult with ALPA representatives and other relevant individuals to investigate issues that may need to be addressed in the event the Board of Directors elects to pursue a merger with ALPA in the future.
>
> …
>
> At the conclusion of the investigation process, the Committee shall produce a final report to the Board of Directors setting forth its findings and recommendations.

21. Pursuant the AAEC charging resolution, the AAEC met with the APA BOD on June 1, 2023, to present its findings and unanimous recommendation that the APA BOD pursue a merger with ALPA.

22. Immediately following the presentation and a brief question and answer session, and without debate or subsequent membership polling, a majority of the APA BOD voted to permanently terminate the AAEC. Later that evening, APA posted the following graphic on its social media accounts:

6



**Allied Pilots Association**
48m · 🌐

•••

After reviewing a final report from the APA-ALPA Merger Exploratory Committee today, the APA Board of Directors voted against proceeding with merger negotiations. For more information, see today's edition of the APA Information Hotline.



23. Thereafter, in response to the heavy-handed rejection by the APA BOD, the grassroots effort began a "card drive" for the purpose of continuing APA member awareness on the issue and pressuring the APA BOD to provide its members a vote on the issue.

24. A few weeks into the "card drive," many supporters of an APA-ALPA merger began running for office as vacancies on the APA BOD began to become available. First, in October of 2023, Capt. Dan Scola ran for CLT Domicile Charman and was elected to that office in January of 2024. Shortly after Capt. Scola's election, Capt. Brian Smith

successfully ran for DFW Domicile Chairman. In or about June or July of 2024, APA-ALPA merger supporting-candidates ran for office in several other domiciles, culminating in the election of several of them to the APA BOD in early fall of 2024. These elections, and particularly the fall 2024 elections, resulted in an APA BOD with significantly more support for an APA-ALPA merger.

25. In or about January of 2025, the newly comprised APA BOD once again initiated membership polling on the APA-ALPA merger issue. The results continued to indicate strong APA member support for an APA-ALPA merger:





26. As a consequence of these polling results, on or about Tuesday, May 8, 2025, the APA BOD, by a vote of 15 votes in favor and 5 against (3/4 affirmative vote), voted to establish an APA-ALPA Merger Negotiation Committee (MNC) for the purpose of "engag[ing] with representatives of ALPA for the purpose of pursuing a proposed merger agreement between APA and ALPA."

27. Although the APA BOD, supported by a significant majority of APA members, voted to pursue a merger agreement, there remains significant opposition to this effort from among a minority of APA members who oppose it.

28. On or about the end of the fall 2024 elections, a coalition of APA members who strongly oppose an APA-ALPA merger filed internal union disciplinary charges against 8 APA members who had run for office on the APA BOD and who had campaigned in favor of an APA-ALPA merger. Of the 8 members charged, 2 had campaigned for office but narrowly lost their elections, 6 had been successfully elected (including the 5 pilots identified in ¶ 24 *supra*). The charges asked that all 8 charged members (the "Charged Parties") be permanently expelled from APA, which, in turn, would result in the effective invalidation of 6 elections.

29. Pursuant to the APA CBL, the APA Appeal Board, APA's internal tribunal, held a hearing on the charges in which Plaintiff served as an authorized peer representative for the Charged Parties. Of important note, two APA BOD members, both of whom actively oppose APA-ALPA merger, served as the authorized peer representatives for the parties

who promulgated the charges. Additionally, during the hearing, there was a significant amount of evidence demonstrating that the coalition and the charges were aided, if not instigated, by certain existing APA leadership and officials who oppose an APA-ALPA merger.

30. In July 2025, the Appeal Board issued its decision, dismissing 5 of the 8 charges. Of the three charges that were upheld, none were subject to expulsion or fines, nor did any sanctions affect the current terms of those presently sitting on the APA BOD. This decision is pending appeal before an arbitrator in accordance with the APA CBL.

31. APA posted publicly the charges, the Appeal Board's decision, as well as all of the transcripts and exhibits from the hearing onto its website. APA also directed APA members' attention to these items by way of one or more emails to all APA members.

<u>The Present APA Elections</u>

32. In or about June of 2025, the nomination process began for 4 additional upcoming vacancies on the APA: two vacancies in the PHL Domicile and two vacancies in the PHX Domicile.

33. Plaintiff was nominated for the position of PHX Domicile Chairman, which he accepted. The initial round of voting began on or about August 6, 2025, and is set to close on August 28, 2025.

34. In or about July or August 2025, Plaintiff, now a candidate for office, began participating on The Line forums.

35. During Plaintiff's "The Line" participation, APA deleted one or more of his forum posts, most if not all of which were critical of some of the APA leadership that actively opposes the APA-ALPA merger process. The deletions were made without explanation.

36. On or about August 12, 2025, Plaintiff received an email from Mr. Jared Kelly, one of APA's in-house attorneys, informing Plaintiff that APA Vice-President Capt. Chris Torres (a known opponent to the APA-ALPA merger initiative) had unilaterally suspended Plaintiff's access to The Line Forums. A true and correct copy of this email is attached hereto as **Exhibit B**. Mr. Kelly detailed two reasons for the suspension:

> Specifically, the following posts and/or behavior on The Line were found to be in violation of the AUP:
>
> 1. Posts in thread "APA/ALPA Merger Thread" which specifically identify several individuals by name, and others by reference, that are bullying/trolling in nature, constitute unlawful harassment, and are defamatory in nature. This includes specific posts that identify members Lawrence Cutler, Jason Gustin, and Steve Pacheco, and a member of the Jumpseat Committee who is easily identifiable based on mention of his participation in a recent election.
>
> 2. Posts containing email communications with another member of APA that were posted without the express permission of the other members involved in said communications.

37. Each of the individuals named in Mr. Kelly's email are known political supporters of VP Chris Torres, and known opponents of the APA-ALPA merger initiative.

38. Plaintiff responded and requested copies of the offending posts (all of which have been deleted from the forum). Mr. Kelly responded (attached **Exhibit C**) and provided

copies of the eight (8) posts deleted by VP Torres (attached **Exhibit D**). Mr. Kelly also confirmed that there are no internal means within APA to challenge this action.

**COUNT I**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(July 31, 2025 post# 1)**

39. On or about July 31, 2025, Plaintiff made a post on The Line concerning the internal union charges detailed in paragraphs 28-31 *supra*. The post does not contain any statements capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

40. On or shortly after this post was made, APA deleted it from The Line.

41. The post does not violate any AUP provision.

42. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

**COUNT II**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(July 31, 2025 post# 2)**

43. On or about July 31, 2025, Plaintiff made a post on The Line concerning the internal union charges detailed in paragraphs 28-31 *supra*. All of the individuals named in the post are named in the case documents that were previously posted and distributed by APA. The post does not contain any statements capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

44. On or shortly after this post was made, APA deleted it from The Line.

45. The post does not violate any AUP provision.

46. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

**COUNT III**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(July 31, 2025 post# 3)**

47. On or about July 31, 2025, Plaintiff made a post on The Line concerning the internal union charges detailed in paragraph 24 *supra*. No individuals are named in this post, nor are there any statements that are capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

48. On or shortly after this post was made, APA deleted it from The Line.

49. The post does not violate any AUP provision.

50. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

**COUNT IV**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(August 1, 2025 post)**

51. On or about August 1, 2025, Plaintiff made a post on The Line concerning an email by an APA officer concerning qualifications for candidates seeking union office. The email

itself is not posted, nor are there any statements capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

52. On or shortly after this post was made, APA deleted it from The Line.

53. The post does not violate any AUP provision.

54. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

**COUNT V**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(August 11, 2025 post at 8:02am)**

55. On or about August 11, 2025, Plaintiff made a post on The Line concerning a union official that defined union guidance but was forgiven for his conduct for supporting an anti-APA-ALPA merger candidate to the APA BOD. The post does not contain any statements capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

56. On or shortly after this post was made, APA deleted it from The Line.

57. The post does not violate any AUP provision.

58. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

**COUNT VI**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(August 11, 2025 post at 7:41am)**

14

59. On or about August 11, 2025, Plaintiff made a post on The Line discussing an email by an APA officer concerning qualifications for candidates seeking union office. The email itself is not posted. The post does not contain any statements capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

60. On or shortly after this post was made, APA deleted it from The Line.

61. The post does not violate any AUP provision.

62. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

**COUNT VII**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(August 11, 2025 post at 7:53am)**

63. On or about August 11, 2025, Plaintiff made a post on The Line containing an email by an APA officer concerning qualifications for candidates seeking union office. The email does not contain any statements capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

64. On or shortly after this post was made, APA deleted it from The Line.

65. Although the post may technically violate the AUP provision prohibiting "post[ing] another APA member's . . . emails to The Line without the express permission of that individual," this AUP provision, as applied to this post, violates Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2). Additionally,

15

upon information and belief, APA deleted the post before ascertaining whether such express permission had been obtained.

66. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

**COUNT VIII**
**INFRINGMENT UPON UNION MEMBER FREE SPEECH**
**IN VIOLATION OF 29 U.S.C. § 411(a)(2)**
**(August 11, 2025 post at 7:54am)**

67. On or about August 11, 2025, Plaintiff made a post on The Line containing an email by an APA officer concerning qualifications for candidates seeking union office. The email does not contain any statements capable of being construed as bullying/trolling in nature, constitute unlawful harassment, or defamatory.

68. On or shortly after this post was made, APA deleted it from The Line.

69. Although the post may technically violate the AUP provision prohibiting "post[ing] another APA member's . . . emails to The Line without the express permission of that individual," this AUP provision, as applied to this post, violates Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2). Additionally, upon information and belief, APA deleted the post before ascertaining whether such express permission had been obtained.

70. The deletion interfered with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

//

### COUNT IX
### INFRINGMENT UPON UNION MEMBER FREE SPEECH
### IN VIOLATION OF 29 U.S.C. § 411(a)(2)
### (August 11, 2025 post at 7:54am)

71. On or about August 11, 2025, ostensibly as a result of the foregoing posts by Plaintiff, APA suspended Plaintiff from participating on The Line.

72. The suspension interferes with Plaintiff's right to "express any views, arguments, or opinions" as provided by 29 U.S.C. § 411(a)(2).

### ATTORNEYS FEES

Although Plaintiff is presently proceeding *pro se*, Plaintiff reserves the right to seek recoupment of his reasonable attorney's fees and costs in the event he hires counsel and incurs attorney's fees in pursuing these claims.

### CONDITIONS PRECEDENT

As alleged in ¶ 38 *supra*, there are no internal remedies to exhaust prior to bringing this action.

### APPLICATION FOR INJUNCTIVE RELIEF

This Complaint is or will be accompanied by a separate Motion for Temporary Restraining Order.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in its favor and for relief against Defendant Allied Pilots Association as follows:

A. A temporary restraining order and preliminary injunction to restore Plaintiff's posts and access to The Line;

B. A permanent injunction to prevent further violations;

C. Attorney's fees and costs, if incurred; and

D. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 15th day of August 2025,

By: *Mitch Vasin*

Mitchell Vasin, *pro se*
c/o Vasin Law PLLC
3100 W. Ray Road, Suite 200
Chandler, AZ  85226
mitch@vasinlaw.com

*Mitchell Vasin v. Allied Pilots Association*

# EXHIBIT

# A

APA's Acceptable Use Policy (AUP) for The Line forums

Effective Date: July 23, 2024

All use of the "members only" portions of the Allied Pilots Association ("APA") Services, including but not limited to its website, forums, and server-based applications, and any of its subparts, (collectively referred to as "Services"), is subject to the following general and specific Terms and Conditions of this Acceptable Use Policy ("AUP") adopted by the APA Board of Directors under the authority provided to the Board by the APA Constitution and Bylaws and Policy Manual. The General Terms and Conditions set forth below apply to all aspects of the Services. Specific Terms and Conditions applicable to particular subparts of the Services are also set forth below or are listed at or within the particular subpart, or both. In what follows, the term "User" means you as a person with authorized and lawful access to the Services.

General Terms and Conditions

Members.Only¿
Access to Services that are password-protected is restricted exclusively to authorized members of APA in good standing and those individuals whom APA has expressly granted access to the Services (e.g., APA staff and consultants). Unauthorized users and personnel from American Airlines or any other airline are expressly prohibited from accessing any of the Services or the information contained on the Services for any reason.

Password.Protection.and.Accountability¿
Each User is responsible for any and all Services activities occurring under their account. Each User is also obligated to take reasonable precautions to secure User's password against dissemination to others without lawful access to the Services. If a User learns that User's password has come into possession of one without lawful access to the Services, the User must promptly inform the APA so that the APA can secure the Services against unlawful access. Users may not delegate, assign, grant, transfer, or share access to APA websites to any other person or entity, and may not share, provide, grant, or transfer access credentials, including passwords, to any other party, regardless of whether the other party is a User.

Impersonation¿
User will not impersonate any other person, business or entity, including without limitation the APA and its officers, moderators, administrators and agents while using the Services.

Services.Disruption¿
APA is not responsible or liable for any service or network disruption to its Services. Users will not circumvent, disable, overburden, or otherwise interfere with security-related features of the Services or networks, including, without limitation, the following activities:

(i) attempting to probe, scan or test the vulnerability of a system or network or to breach security or authentication measures without proper authorization; (ii) attempting to interfere with communication to any user, host or network, including, without limitation, via means of submitting a virus to the Services, overloading, "flooding," "spamming," "mailbombing," or "crashing"; (iii) transmitting or otherwise making available any content containing any "virus," "worm," or "trojan horse" or any other computer code, file or program designed to interrupt, destroy or limit the functionality of any computer or hardware or telecommunications equipment.

Automated.Systems¿

Users will not use or launch any automated system, including, without limitation, "robots," "spiders," or "offline readers," that sends or is intended to send more request messages to the APA servers in a given period of time than a human can reasonably produce in the same period by using a conventional online Web browser.

Information.Collection¿

Users may not use any data mining or similar data gathering and extraction tools on the Services, or reproduce, reprint, copy, store, publicly displace, broadcast, transmit, modify, translate, port, publish, sublicense, assign, transfer, sell, loan or otherwise distribute the information on The Services.

Availability.and.Changes.to.Terms¿

These terms and conditions will be continuously available from a link on at least the central pages of the APA Web site and may be amended by the APA Board of Directors at any time without notice, effective upon posting of the modified AUP on the APA Web site. APA reserves the right to change or amend this AUP or the General or Specific Terms and Conditions without notice and without liability. The User is responsible for regularly reviewing the Terms and Conditions of the AUP and complying with same. Use of these Services indicates a User's agreement with the AUP.  and any General and Specific Terms and Conditions. Users who disagree with the AUP and any of the General or Specific Terms and Conditions should not use APA Services. APA reserves the right to cancel, interrupt, suspend, or terminate all or part of its Services with or without notice. Such actions may be taken at the discretion of the President or Board of Directors when circumstances warrant.

Choice.of.Law.and.Arbitration.Clause¿

This site is remotely accessible throughout the United States and the world. By accessing this site, you agree to be subject to Texas law and agree to be subject to personal jurisdiction in the counties of Tarrant or Dallas within the State of Texas. Users are required to submit any claims, controversies, disputes, or disagreements against APA regarding use of Services and this site to mandatory and binding arbitration. Arbitrators will be selected

by strike method from the approved APA Appeal Board list of arbitrators, or if no arbitrator on the Appeal Board list is available, by an arbitrator selected by the American Arbitration Association ("AAA"). Any disputes arising out of the use of this site will be governed by Texas law regardless of any conflict of laws. In the event any claim or dispute shall be filed in a judicial setting, despite the requirement for mandatory and binding arbitration herein, such claim or dispute may only be filed in Tarrant County, Texas.  In such event, User understands that APA retains the right to compel the dispute to be decided through binding arbitration.

Indemnification¿

User agrees to indemnify, defend, and hold APA harmless from and against any and all claims, demands, proceedings, grievances, arbitrations, suits and actions (including appeals), including any related liabilities, obligations, losses, damages, deficiencies, penalties, taxes, levies, fines, judgments, settlements, expenses (including reasonable attorneys and arbitrator fees), and costs (collectively, the "Claims"), based on, arising out of or resulting from your use these Services and this site, including without limitation any Claims alleging facts that if true would constitute your breach of the AUP and any general or specific Term and Condition. As used within these Terms and Conditions, APA includes its National Officers, Domicile Representatives/members of the Board of Directors, and APA employees, staff, and agents. If you do not agree with this AUP or any of these General or Specific Terms and Conditions, please exit the site now.

Specific Terms and Conditions for the Use of The Line

The APA may elect to host The Line Forum ("The Line") to allow for discussion of issues pertaining to the execution of American Airline pilot duties.  Subject to compliance with the terms of this AUP, the Line is reserved for and is available to apprentice members in good standing, active members in good standing, inactive members, and, where permitted, retirees. APA members holding management positions with American Airlines, non-members and members who have been permanently suspended are not authorized use of The Line. APA may authorize access to and use of The Line to additional users for purposes of maintenance and administration. Use by any others on The Line that is not specifically granted by APA is strictly prohibited and may result in legal action.

APA may limit the scope of issues permitted to be discussed on The Line.  Posts, discussions, and/or threads which relate to topics that are not properly within one of the approved forums or are otherwise in violation of this AUP or these Specific Terms and Conditions will be removed from public view subject to further review and action in accordance with the Policy Manual.  APA may limit or restrict the use of hyperlinks, pictures, and/or other linked material at its discretion.

APA will respond to complaints or reports of unauthorized use or violations of this AUP or its Specific Terms and Conditions. APA reserves the right to remove posts or threads consistent with its need to comply with APA's legal and contractual obligations, or to remove posts or threads which create safety risks, encourage illegal behavior, defame, harass, constitute an act identified in Section 1.A of Article VII of the APA Constitution and Bylaws, or which exhibit or promote behavior prohibited by this AUP or these Specific Terms and Conditions, or which is prohibited by law. To the extent a post directly quotes a post removed as described in the preceding sentence, APA reserves the right to modify such post for the sole and express purpose of removing said directly quoted material. By continuing on to and using The Line, you agree to comply with this AUP and its General and Specific Terms and Conditions. Failure to comply with this AUP and these Specific Terms and Conditions may result in (1) your posts and/or threads being removed from public view and/or deleted without prior notice; (2) User suspension or termination from The Line and/or APA Services; (3) union discipline in accordance with the Constitution & Bylaws; and/or (4) legal (civil and/or criminal) action.

Prohibited Activity
Prohibited activity and conduct that may result in posts or threads being removed, User suspension or termination from The Line and/or APA Services, union discipline, or legal (civil and/or criminal) action, includes but is not limited to:

1. Bullying and trolling behavior. Threads and posts about particular members, Users, APA employees, staff, or agents, that are meant to or which actually target for purposes of harassment, intimidation, threats, or bullying are inappropriate for this forum and are prohibited. "Trolling" behavior includes, but is not limited to, making threads and posts which are inflammatory, insincere, digressive, extraneous, or off topic with the intent of provoking others into displaying emotional responses, or manipulating others' perceptions or reactions.

2. Users may not make statements which constitute unlawful harassment or hate speech, promote unlawful discrimination, create a hostile work environment, or which are otherwise inappropriate about another person or group of people based on, but not limited to, age, marital status, religion, national origin, disability, military status, alienage, citizenship, race, color, creed, gender, gender identity, disability, political affiliation, sex, sexual orientation, domestic partnership, pre-disposing genetic characteristic, carrier status, or any other protected category under federal, state and/or local laws and regulations.

3. Users may not make statements that may be deemed to be defamatory.

4. Users may not encourage or promote illegal job actions in violation of the RLA or other law.

5. Users may not upload, share, distribute, or post any content that is obscene, unlawful, or indecent.

6. Users may not post "Scab" lists.

7. Users shall not post another APA member's or APA employee, staff, or agent's personal information, texts, emails, photos, videos, or other communications to The Line without the express permission of that individual.

8. Commercial postings are prohibited. The Line is not a forum to post business ventures, advertisements, pyramid schemes, or other types of business opportunities. Members may not advertise or promote any business ventures, including his or her own business ventures. This also includes but is not limited to: spam, surveys, chain letters, lotteries, purchase specials, or contests. Users may not use this site or materials or information gained from this site for any commercial purpose; users may not copy, reprint, distribute, publish, rely on, create derivative works from, license, sell, transfer, or otherwise use materials or information gained on this site without express permission. Posts soliciting funds for 501(c)3 charities are permitted.

9. Users may not misuse any patent, trademark, copyright, or other intellectual property protected information. Users shall not post or load any content in violation of intellectual property laws.

10. Uploading or posting of viruses, code, software or other programs is prohibited. Users shall not post anything that will embed or cause to be embedded any codes or content that results in any externally-hosted content to appear or be delivered with a post.

11 Users may not make off-topic posts and threads. If a post or thread is deemed off-topic from the forum in which it is posted, it may be placed under review subject to further review and action or moved to the appropriate forum if one exists. If there is no authorized forum for the post or thread, it will be subject to review and deletion.

12. Targeting a participant for harassment, intimidation, threats or bullying in response to the reporting of posts which violate the AUP constitutes an independent violation of the AUP.  Targeting a participant with excessive or bad faith reporting of posts which are not deemed to violate the AUP may also be considered bullying or trolling behavior in violation of the AUP.

13.  Other activity or conduct which is deemed contrary to the purposes or intent of The Line or which violates the Constitution & Bylaws or applicable law.

Reporting.Violations¿

Members are encouraged to be active participants in maintaining the positive and constructive atmosphere of The Line by self-policing threads and posts on The Line. Posts which violate the AUP or the Specific Terms and Conditions may be reported to APA using the Report link within The Line. Reported posts will be reviewed against this AUP and its Specific Terms and Conditions and posts that may violate the AUP and/or its Specific Terms and Conditions may be removed from public view for further review and consideration by the President or the President's Designee(s), in accordance with the Policy Manual. Violations of the AUP, including but not limited to, sharing or providing posts and threads from The Line to third parties, including American Airlines and its management, may result in immediate and permanent suspension.

Users may delete their own posts at any time. Due to system limitations, posts that begin a thread cannot be deleted, but the content in the post may be edited and/or deleted by the User. If a User requires assistance to delete a post, they may click on the Report link or call APA IT or APA Legal. Even if not reported, posts and threads may be removed by APA under this AUP and General and Specific Terms and Conditions and as authorized by the APA Policy Manual or as required by law.

Reports and reporters are only visible to moderators, APA Legal, and the President or Designee(s). Upon request, a member whose post was reported and deleted may be provided with a copy of the deleted post. Under no circumstance will a reporter's identity be disclosed to others beyond those authorized to access such information.

While members are encouraged to self-police The Line, serial or targeted reporting is not permitted. If, within seven calendar days, a User makes five reports that are deemed to not be in violation of the AUP, the User will be restricted from reporting for seven calendar days following the fifth report.

Suspensions¿

Violations of the AUP may result in restriction of access to The Line for a specified period of time.  The duration of access restriction will be dependent on the severity of the action constituting a violation of the AUP and the history of violations by the offending party.  Restrictions will be imposed by the President or Designee(s) according to the below guidelines.

a. First suspension: no more than 14 business days unless circumstances dictate a longer period as set forth in the Policy Manual.

b. Second suspension: continuing non-compliance with the AUP following an initial suspension will subject a participant to immediate permanent suspension.

Permanent suspensions from access to The Line may be appealed by the affected member to the Appeal Board in accordance with the Policy Manual.  Retirees who are provided access to The Line may not appeal any suspension or revocation of such access to the Appeal Board.

Miscellaneous¿

APA reserves the right to limit access to The Line or create sub-sections of The Line for specific Users or User groups if needed to comply with representational or other legal responsibilities. APA is not responsible for archiving or maintaining a record of any or all posts or threads placed on The Line by its users but reserves the right to do so solely at its discretion. Nor does APA provide Users the right to access, or request access to, archived posts or threads.

The Line is for personal use and is hosted on a private website; however, APA does not guarantee or warrant that posts, threads, discussions, or any comments made on The Line will remain private and not be released to third parties. Although these Specific Terms and Conditions prohibit sharing of The Line content with American Airlines, APA does not warrant or guarantee that individual posts or comments will not be provided to American Airlines or its management. Users and their posts and comments should remain professional.

APA does not warrant, guarantee, endorse, or vouch for the information or content posted to The Line by any of its users. APA is not responsible or liable for any of the information or content posted by Users. APA discourages posting links to outside websites or sources. APA has no control over or responsibility for websites or links not under its control. Clicking on an outside link is done at the User's own risk. APA is not responsible for any content, activity, or consequences for following outside links. User is solely responsible for any user policies, restrictions, activity, or content of outside links and will not hold APA liable for any content, activity, or consequences for following outside links.

This AUP, together with any other legal notices published by APA shall constitute the entire agreement between you and APA concerning the Services and supersede all previous written or oral agreements, if any, between you and APA relating to any matter dealt with herein. If any part of this AUP is held invalid or unenforceable by a court of competent jurisdiction, that portion shall be construed in a manner consistent with applicable law to reflect, as nearly as possible, the original intentions of the parties, and the remaining portions shall remain in full force and effect.

No waiver of any term of this AUP shall be deemed a further or continuing waiver of such term or any other term, and APA's failure to assert any right or provision under this AUP

shall not constitute a waiver of such right or provision. This AUP and any rights and licenses granted hereunder, may not be transferred or assigned by you, but may be assigned by APA without restriction. This AUP and the rights and obligations created hereunder shall be binding upon and inure solely to the benefits of the parties hereto and their respective successors and assigns, and nothing in this AUP, express or implied, is intended or should be construed to confer upon any other person any right, remedy or claim under or by virtue of this AUP.

If you do not agree with this AUP or these General or Specific Terms and Conditions, please exit the site now.  By continuing to use this site you are agreeing to comply with the AUP and the General or Specific Terms and Conditions.

*Mitchell Vasin v. Allied Pilots Association*

# EXHIBIT B

August 11, 2025 email from APA Legal – 1 of 2



**Mitch Vasin <mitchvasin@gmail.com>**

---

## Notification of suspension from The Line

**Kelly, Jared <jkelly@alliedpilots.org>**                                    Tue, Aug 12, 2025 at 6:15 AM
To: "mitchvasin@gmail.com" <mitchvasin@gmail.com>

CA Vasin,

Please be advised that the President's Designee, Vice President Chris Torres, has suspended you from The Line for a period of fourteen days, effective immediately. You have made a post which has violated the APA's Acceptable Use Policy.

The AUP provides as follows:

The AUP prohibits users from bullying and/or trolling behavior.

The AUP prohibits users from making statements which constitute unlawful harassment, create a hostile work environment, or which are otherwise inappropriate about another person or group of people.

The AUP prohibits users from making statements that may be deemed to be defamatory.

The AUP prohibits users from posting another APA Member's emails or other communications to The Line without the express permission of that individual.

Specifically, the following posts and/or behavior on The Line were found to be in violation of the AUP:

1. Posts in thread "APA/ALPA Merger Thread" which specifically identify several individuals by name, and others by reference, that are bullying/trolling in nature, constitute unlawful harassment, and are defamatory in nature. This includes specific posts that identify members Lawrence Cutler, Jason Gustin, and Steve Pacheco, and a member of the Jumpseat Committee who is easily identifiable based on mention of his participation in a recent election.

2. Posts containing email communications with another member of APA that were posted without the express permission of the other members involved in said communications.

Your suspension will end on August 26, 2025.

Jared J. Kelly, Esq.

Labor Attorney



Allied Pilots Association

14600 Trinity Blvd. Suite 500

Fort Worth, Texas 76155

jkelly@alliedpilots.org

(817) 302-2177 -- Direct Line

(817) 302-2187 -- APA Legal Fax

Confidentiality Notice: This email is not encrypted. However, the email is confidential and may be privileged, and it is for the sole use of the named and intended recipient. Any review by or distribution to others is strictly prohibited and may be illegal. If you are not the intended recipient, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please delete all copies received and notify the sender or the receptionist of APA Legal immediately at (817) 302-2170.

*Mitchell Vasin v. Allied Pilots Association*

# EXHIBIT
# C

August 11, 2025 email from APA Legal – 2 of 2

 Gmail

Mitch Vasin <mitchvasin@gmail.com>

**Notification of suspension from The Line**

Kelly, Jared <jkelly@alliedpilots.org>                                    Tue, Aug 12, 2025 at 12:12 PM
To: Mitch Vasin <mitchvasin@gmail.com>
Cc: Vice President <vice-president@alliedpilots.org>

CA Vasin,

Attached please find copies of the posts you have requested. And you are correct in that there is no appeal for temporary suspensions from The Line.

Best,

Jared

**From:** Mitch Vasin <mitchvasin@gmail.com>
**Sent:** Tuesday, August 12, 2025 08:51
**To:** Kelly, Jared <jkelly@alliedpilots.org>
**Cc:** Vice President <vice-president@alliedpilots.org>
**Subject:** Re: Notification of suspension from The Line

You don't often get email from mitchvasin@gmail.com. Learn why this is important

[Quoted text hidden]

📄 **All Posts 11AUG2025.pdf**
3346K

*Mitchell Vasin v. Allied Pilots Association*

# EXHIBIT
# D

Plaintiff's deleted "The Line" posts

Reports  121   Moderator

# THE LINE

## Disclaimer

The Line is being reinstated on a trial basis. At this time only the following subforums are being reinstated: The Help Desk (Contract/CBA Q&A and Scheduling Q&A), General Airline Topics(AA Pilot Medical Forum and Union Business), Membership Q&A(Ask the Vice President) and Fleet Systems & Training.

Participation on The Line remains subject to the Acceptable Use Policy (AUP) as adopted by the APA Board of Directors. Posts which are off-topic from the above-subforums or otherwise violate the AUP will be removed.

Participants are reminded that they do not have "First Amendment" protections in their use of The Line and all participants are subject to the reasonable rules for use as set forth in the AUP. Participants who violate the terms of the AUP are subject to suspension or permanent ban from accessing The Line.

---

Home    APA Home    **Forums**    What's new    Members

Home  ›  Forums  ›  The Line Moderators  ›  **Under Review**  ›

# APA / ALPA Merger Thread

👤 Mitchell Vasin 542230  ·  🕐 Today at 8:02 AM  ·  🏷 None

☑ Ignore thread    Watch    ••• ▾

---

**Today at 8:02 AM**    ⤴ #1

**Mitchell Vasin 542230**
MBR PHX/CA/737/INT 4964

> Linda Pauwels 137555 said: ⤴
>
> What's funnier is asking the membership to sacrifice when the leadership is unwilling to do so. And life lessons have taught me none of us is indispensable.

My favorite - a member of the Jumpseat Committee was fired for floating his vacation. And then he was invited to be reinstated on the condition that he put his name in as a candidate at the last DFW election, run a very anti-ALPA campaign, and then endorse Jason Gustin when he lost. He did just that, and he's now back on the jumpseat committe.

☐ Report    Edit    Delete    IP    Warn        👍 Like    ＋Quote    ↩ Reply

Write your reply...

Attach files

Post reply    Preview

Home › Forums › The Line Moderators › **Under Review** ›

Light Mode - Default

Terms and rules    Privacy policy    Help    Home



### Disclaimer

The Line is being reinstated on a trial basis. At this time only the following subforums are being reinstated: The Help Desk (Contract/CBA Q&A and Scheduling Q&A), General Airline Topics(AA Pilot Medical Forum and Union Business), Membership Q&A(Ask the Vice President) and Fleet Systems & Training.

Participation on The Line remains subject to the Acceptable Use Policy (AUP) as adopted by the APA Board of Directors. Posts which are off-topic from the above-subforums or otherwise violate the AUP will be removed.

Participants are reminded that they do not have "First Amendment" protections in their use of The Line and all participants are subject to the reasonable rules for use as set forth in the AUP. Participants who violate the terms of the AUP are subject to suspension or permanent ban from accessing The Line.

Home    APA Home    Forums ⌄    What's new ⌄    Members ⌄

Home › Forums › The Line Moderators › **Under Review** ›

# APA / ALPA Merger Thread

👤 Mitchell Vasin 542230 · 🕐 Today at 7:41 AM · 🏷 None

☑ Ignore thread    Watch    ··· ⌄

**Today at 7:41 AM**                                                              ⤴ #1



**Mitchell Vasin 542230**
MBR PHX/CA/737/INT 4964

> Christopher Krahulec 751551 said: ⬆
>
> Maybe just maybe if you had not been actively openly pushing for ALPA for almost 10 years now (aka since the merger was completed) your opinions might be viewed more openly but given the history it simply seems like a personal goal of yours not what's in the best interest of the pilot group.

Well, APA-initiated polling indicates that this opinion of mine is shared by the majority of the pilot group.

And as has always been the case, I believe this is the pilot groups' issue to decide.

And here you are, armed with union titles and funded by union dues, espousing something different.

↑

> As for integrity I'm not sure how you get there by putting in place a new boss.... Either
> you have it or you don't. Bosses don't create integrity.

You don't understand because you don't know any better. Your universe of union experience is limited to the APA building and its standard-issue soundbites.

I'll give you a single example. Pat Clark (former ST) let Larry Cutler (anti-ALPA) run for office at a domicile where he wasn't based, but told a (pro-ALPA) LAX pilot that he couldn't do the same. In other words, the "rules" were applied based solely upon somebody's political whim.

Under ALPA, elections are administered by the national union's election department. That elections department is staffed by former DOL personnel. That's all they do - administer union elections. They are not influenced by any member airline's politics.

In other words, candidate eligibility under ALPA is based upon that the constitution says - not upon the AA Secretary-Treasurer's politically-motivated determination.

Article VII charges are heard by 3 pilots from other airlines, and not 3 pilots who were appointed by an anti-ALPA BOD.

And so on.

There is no "boss" - just a true non-politically-motivated application of the rules.

☐   Report    Edit    Delete    IP    Warn                    👍 Like    ＋ Quote    ↰ Reply

>    Greg Shayman 575456

---

| ⟐ | **B** | *I* | U̲ | S̶ | ⬥ | A ▾ | T↕ ▾ | 🔗 | 🖼 | 🙂 | ••• ▾ | ☰ ▾ | ☷ ▾ | ▦ |

↺  ↻  🖫 ▾  ⚙

Write your reply...

📎 Attach files                              ↰ Post reply    👁 Preview

↑

Light Mode - Default

Terms and rules   Privacy policy   Help   Home



## Disclaimer

The Line is being reinstated on a trial basis. At this time only the following subforums are being reinstated: The Help Desk (Contract/CBA Q&A and Scheduling Q&A), General Airline Topics(AA Pilot Medical Forum and Union Business), Membership Q&A(Ask the Vice President) and Fleet Systems & Training.

Participation on The Line remains subject to the Acceptable Use Policy (AUP) as adopted by the APA Board of Directors. Posts which are off-topic from the above-subforums or otherwise violate the AUP will be removed.

Participants are reminded that they do not have "First Amendment" protections in their use of The Line and all participants are subject to the reasonable rules for use as set forth in the AUP. Participants who violate the terms of the AUP are subject to suspension or permanent ban from accessing The Line.

Home    APA Home    Forums    What's new    Members

Home > Forums >

# Export thread

## APA / ALPA Merger Thread

Today at 7:53 AM                                                                                        #1



Mitchell Vasin 542230

> Linda Pauwels 137555 said: ⬆
>
> Can we get more details on this? I thought you could not run/represent a domicile unless you were based there?

Yes - see email#1 - August 1, 2024 - concerning Larry Cutler (anti-ALPA) running for office in Boston. Read from the bottom up.

**From:** "Clark, Pat" <pclark@alliedpilots.org>
**Date:** August 1, 2024 at 10:37:55 EDT
**To:** Mitch Groder <groder757@gmail.com>
**Subject: Re: Candidate Moving Domiciles**

Mitch,

The only requirement for eligibility to run for office in the C&B is as follows:

Only active members in good standing (excluding Apprentice Members) shall be eligible for nomination and
election to Domicile or National Office. An Officer who retires during a term of office shall vacate that office
automatically upon retirement. Any Officer who is ordered to active duty service in the U.S. military in excess of
90 consecutive days or more than 120 days in any 12-month period will be required to resign his/her office and
the vacancy filled in accordance with *C&B Article IV, Section 3* or *C&B Article VI, Section 4*. (R97-102) *(R03-85)*
*(R23-15) (R23-42)*

Any active member in good standing (excluding Apprentice Members) may submit him or herself, or any
other active member in good standing, for nomination for office. Submissions shall be made using the online
nomination form as indicated in the election notice. Submissions for nomination must be received by the
deadline published in the election notice, and will be posted to the APA website upon receipt. All persons
submitted for nomination shall be immediately notified via phone and email, and shall have seven days from
the closing of the submission period to execute a statement, in a form provided by the Secretary-Treasurer,
that he or she will serve if elected.

There is technically no requirement that you be a member of a base at any particular time in order to be eligible to run.

From iPhone

On Aug 1, 2024, at 7:19 AM, Mitch Groder <groder757@gmail.com> wrote:
You don't often get email from groder757@gmail.com. Learn why this is important at https://aka.ms/LearnAboutSenderIdentification

Hi Pat.

The final bid award that came out on July 12 shows he is BOS CA 737 with effective date of 01NOV.

With that being the case, regardless of him withdrawing, he would not be eligible, correct?

Will he be removed from the ballot prior to the nomination round?

Thanks
Mitch


Sent from my phone.

On Aug 1, 2024, at 08:07, Clark, Pat <pclark@alliedpilots.org> wrote:

Hi Mitch,

I'm out of the office this week on vacation with limited phone and internet, but it's my understanding his award is effective 1 DEC, so technically he could run. (But I've spoken with him and he has advised he is going to withdraw)

Pat
Sent from my iPad

On Jul 31, 2024, at 10:05 PM, Mitch Groder <groder757@gmail.com> wrote:

[You don't often get email from groder757@gmail.com. Learn why this is important at https://aka.ms/LearnAboutSenderIdentification ][/QUOTE]

Hi Pat-

As you know, one of the candidates running for LGA Chair is BOS based effective NOV 1.

Is he eligible to run for LGA Chair while being projected to be BOS based starting when the term starts? (Per the final vacancy award)[/QUOTE]

Is APA going to make a ruling on this?

Thanks
Mitch Groder
PHL A320 CA
Sent from my phone.

Today at 7:54 AM                                                                    #2



Mitchell Vasin 542230


See email #2 - not 4 months later - wherein Jon Brigance (pro-ALPA) tries to run for office in LAX.


From: **SECRETARY-TREASURER** <secretary-treasurer@alliedpilots.org>
Date: Mon, Dec 2, 2024 at 1:28 PM
Subject: RE: BOD nomination candidate
To: Jon Brigance <jetpilotjon@gmail.com>


Hi Jon,

Unfortunately, to be eligible for nomination, you must be LAX based during the nomination
process which begins in DEC 24.

Pat

**From:** Jon Brigance <jetpilotjon@gmail.com>
**Sent:** Monday, December 2, 2024 2:17 PM
**To:** SECRETARY-TREASURER <secretary-treasurer@alliedpilots.org>
**Subject:** BOD nomination candidate

   You don't often get email from jetpilotjon@gmail.com. Learn why this is important
Hello,

I have an effective date of 03/02/2025 for LAX 320 CA, will I be able to get on the nomination
round for LAX BOD chair/vice chair. Coming from PHX.


Jon M. Brigance

Home › **Forums** ›

🖉 Light Mode - Default

Terms and rules    Privacy policy    Help    Home    🔊

Reports 131    Moderator ▼

# THE LINE

## Disclaimer

The Line is being reinstated on a trial basis. At this time only the following subforums are being reinstated: The Help Desk (Contract/CBA Q&A and Scheduling Q&A), General Airline Topics(AA Pilot Medical Forum and Union Business), Membership Q&A(Ask the Vice President) and Fleet Systems & Training.

Participation on The Line remains subject to the Acceptable Use Policy (AUP) as adopted by the APA Board of Directors. Posts which are off-topic from the above-subforums or otherwise violate the AUP will be removed.

Participants are reminded that they do not have "First Amendment" protections in their use of The Line and all participants are subject to the reasonable rules for use as set forth in the AUP. Participants who violate the terms of the AUP are subject to suspension or permanent ban from accessing The Line.

✉  🔔  🔍

Home    APA Home    Forums ▼    What's new ▼    Members ▼

Home > Forums >

# Export thread

## APA / ALPA Merger Thread

Jul 31, 2025                                                                                          #1



Mitchell Vasin 542230

> Linda Pauwels 137555 said: ⊕
>
> Interesting. What is Lee Seeham's role?

He was listed as a witness for the Charging Parties (Moss & Phelan - and their handlers), and they identified exhibits that they were going to use for his testimony to include the 2008 RICO lawsuit (that is central to the Cutler / Gustin defamation campaign against America West pilots). They didn't ultimately call him as a witness (for reason I won't get into here).

It was also obvious to me that Cutler & Gustin were receiving at least some legal advice throughout the proceeding, and the style of that advice looked familiar to me.

Also, their closing brief was obviously written by a lawyer and the writing style appeared to me to be Lee Seham's.

Finally, this situation is exactly the sort of thing that Lee Seham specializes in: he gets involved in situations where union members are angry at one another (and / or at their national union), and then sells them a litigation strategy that is divisive, protracted, and highly unsuccessful yet extremely profitable to him. Cutler and Gustin are exactly the sort of people who Seham likes to take advantage of: self-righteous and driven by anger.

Jul 31, 2025                                                                                              #2



Mitchell Vasin 542230

> Linda Pauwels 137555 said: ⊙
>
> Phelan shows greatly improved writing skills from C&R of years past! Exhibits, memo from Marty Seham to Lavoy (1991) and AA Pilots for ALPA are interesting, indicating who is in crosshairs.

Also indicative of who is really behind all of this.

At the hearing, both Moss and Phelan indicated their intent to continue to target people they don't like using their Dirty DropBox. Much of the APA Membership Committee, and in particular its Chair Steve Pacheco, is involved with this BTW.

Meanwhile, a pro-APA cadre of pilots organized, with more than 40 members communicating and coordinating for the express aim of preserving APA as an institution. Tr. 296:18-25 and 297:1-15. These members compiled evidence which eventually led to the drafting and submission of lengthy Article VII charges against the Charged Parties. The Charging Parties declined to identify these 40 members or to identify the specific individuals involved in drafting

10

the charges. Testimony established, however, that neither CA Michael Phelan nor FO Jay Moss drafted the charges.

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mitchell Vasin

## DEFENDANTS

Allied Pilots Association

**(b)** County of Residence of First Listed Plaintiff    Maricopa, Arizona
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Tarrant, Texas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☒ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 412

Brief description of cause:
Suit against labor union for unlawful infringement on union member's right to free speech.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
August 15, 2025

SIGNATURE OF ATTORNEY OF RECORD
*Mitch Vasin*

## FOR OFFICE USE ONLY

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

JS 44 Reverse (Rev. 04/21) (TXND (4/21)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.